Ross **SELLMAN**, Petitioner,

v.

The **UNITED STATES of America**, Respondent.

Nos. WMN–98–1559, MJG–95–0111.

United States District Court,
D. Maryland.

April 20, 2000.

---

Arcangelo M. Tuminelli, Baltimore, MD, for petitioner.

Lynne A. Battaglia, United States Attorney for District of Maryland, Martin J. Clarke, Assistant United States Attorney, Baltimore, MD, for respondent.

## MEMORANDUM

MALETZ, Senior District Judge.[1]

On October 5, 1995, after a trial by jury, Ross Sellman was convicted of several narcotics and firearm offenses. He was subsequently sentenced under 18 U.S.C. § 924(e)[2] as an armed career criminal to a term of 322 months of imprisonment followed by six years of supervised release. An appeal was filed on Sellman's behalf, and the Fourth Circuit affirmed both the convictions and the sentence. *See United States v. Sellman,* No.95–5970, 1997 WL 337486 (4th Cir. June 19, 1997) (unpublished). Petitioner then filed a motion pursuant to 28 U.S.C. § 2254 (1994), *amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, challenging his 1981 state conviction for breaking and entering in violation of Maryland Ann.Code, Article 27, § 31A.

Judge Nickerson of this court, noting that Sellman's sentence on the state charge had expired, instructed the Clerk of Court to amend the docket to reflect a § 2255 petition rather than a § 2254 petition. As the judge noted, a federal court may only grant habeas relief under 28 U.S.C. § 2254 if the petitioner is "in custody" under the state conviction which he challenges. *See Maleng v. Cook,* 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). The Supreme Court held, "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id.* at 492. Further, Sellman was convicted in 1981 and sentenced

---

1. Of the United States Court of International Trade, sitting by designation.
2. This provision reads in pertinent part:
 In the case of a person who violates section 922(g) of this title and has three previous convictions by any court ... for a violent felony or a serious drug offense ... such person shall be fined not more than $25,000 and imprisoned not less than fifteen years.

to six months imprisonment—that term of imprisonment had long since expired when he filed his § 2254 petition in May of 1998. Given these circumstances, Sellman's petition was docketed as a § 2255 petition.

After the petition was amended, Sellman submitted a second memorandum outlining several other claims that he asked the court to consider, i.e.: 1) that his underlying state conviction for distribution of heroin was not valid; 2) that his attorney was ineffective; 3) that he was entitled to a downward departure for his overstated criminal history; and 4) that certain of his convictions violated double jeopardy.

■ Sellman's claims have not been previously raised on appeal; therefore, these claims are procedurally defaulted unless he can demonstrate "both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *See United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Sellman fails to make this showing for any of his claims; therefore, the petition to vacate is denied.

I. *Validity of Underlying State Convictions*

■ Sellman challenges the legality of two separate state convictions that formed the basis of his armed career criminal status. The first is a 1981 conviction for breaking and entering and the second is a 1979 conviction for distribution of heroin. These claims both fail because the court is without jurisdiction to review them. *See Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994).

■ In *Custis*, the Supreme Court held that 18 U.S.C. § 924(e), the armed career criminal statute under which Sellman was sentenced, does not permit collateral attacks on underlying convictions pursuant to 28 U.S.C. § 2255. *See Id.* at 493, 114 S.Ct. 1732. The only exception is when a

petitioner has been denied appointment of counsel in violation of *Gideon v, Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See Id.* at 494–495, 83 S.Ct. 792. In this connection, the Court in *Custis* held that "the admission of a prior criminal conviction that is constitutionally infirm under the standards of Gideon is inherently prejudicial and to permit use of such a tainted prior conviction for sentence enhancement would undermine the principle of Gideon." *Id.* at 495, 114 S.Ct. 1732 citing *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Absent this exception, the only recourse available to a petitioner is a federal habeas review of the state conviction pursuant to § *2254*, *Custis*, 511 U.S. at 497, 114 S.Ct. 1732; however, as noted above, this option is foreclosed to Sellman as well, because he is no longer "in custody" for the convictions in question.

In short, the court is without jurisdiction to review the validity of Sellman's underlying state convictions regardless of whether the challenges come in the form of a § 2254 or a § 2255 petition.

II. *Ineffective Assistance*

Next, Sellman claims that his attorney was ineffective during both trial and sentencing.[3] The Supreme Court has adopted a two-prong test for determining whether a defendant has received adequate assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must prove that his attorney's conduct fell below an objective standard of reasonableness and that such deficient performance caused him prejudice. *See Id.* at 687–91, 104 S.Ct. 2052. Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. 2052. Accord-

---

3. In addition to the claims discussed below, petitioner also alleged that his attorney failed to properly advise him about the terms of the government's plea offer. Counsel was appointed for Sellman to address this issue, and

on March 10, 2000, the court held a hearing on the claim. At the conclusion of this hearing, the court issued an oral opinion from the bench denying relief.

ing to *Strickland,* there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See Id.* at 688–89, 104 S.Ct. 2052. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even if the attorney had been deficient. *Id.* at 697, 104 S.Ct. 2052.

Petitioner first alleges that his attorney was deficient for failing to object to an erroneous jury instruction. He argues that the court improperly instructed the jury on the elements of a § 924(c) offense. Sellman concedes that the court gave the following instruction:

> The first element the government must prove beyond a reasonable doubt is that the defendant committed a drug trafficking crime for which he might be prosecuted in a court of the United States. The defendant is charged in counts two and five of the indictment with committing the crimes of possession of cocaine and heroin with intent to distribute. I instruct you that the crime of possession of cocaine and heroin with intent to distribute is a drug trafficking crime. However, it is for you to determine whether the government has proven beyond a reasonable doubt that the defendant committed the crimes of possession of cocaine and heroin with intent to distribute as charged.

However, Sellman maintains that the court's instruction was incomplete because it failed to define the elements of "possession with intent to distribute" as well as the elements of "simple possession;" therefore, he argues, counsel should have objected to it.

Petitioner's allegations are factually incorrect. The record clearly indicates that the jury was instructed on both "possession" and "possession and intent to distribute." Indeed, court went on to say:

> Basically what you are determining is whether the drugs in the defendant's possession were for his personal use or

for the purpose of distribution. Often it is possible to make this determination from the quantity of drugs found in the defendant's possession.... The possession of a large quantity of drugs does not necessarily mean that the defendant intended to distribute them. On the other hand, a defendant may have intended to distribute controlled substances even if he did not possess large amounts of them.

Given this background, it was reasonable for counsel not to object to the court's instruction.

■ Next, Sellman maintains that his attorney was deficient for stipulating to certain elements of the offenses without obtaining petitioner's consent. Furthermore he argues that a stipulation is tantamount to a guilty plea; therefore, it should require a Rule 11 hearing.

Sellman submits, and the government does not dispute, that the parties stipulated: 1) that the firearms Sellman was charged with possessing were "designed to expel a projectile by action of an explosive" and traveled in interstate commerce prior to Sellman's alleged possession; 2) that the substances in question were in fact heroin and cocaine; and 3) that prior to the charged offense, Sellman was convicted of a "crime punishable by imprisonment for a term exceeding one year."

It is Sellman's contention that: 1) a stipulation requires a Rule 11 colloquy; and 2) that an attorney cannot enter into stipulations over the objection of a defendant. However, petitioner's claim is lacking in several respects, most notably, he does not even *allege* prejudice, let alone demonstrate how his attorney's decision actually prejudiced him. Nowhere in any of his pleadings does he even suggest that he would have objected to the stipulations if better advised by counsel.

■ Sellman's contention that a stipulation requires a Rule 11 colloquy is in direct conflict with the Fourth Circuit's holding on this issue. *See United States v. Muse,*

83 F.3d 672, (4th Cir.1996). In *Muse,* the Court held that a Rule 11 hearing is not necessary when a defendant stipulates to less than all of the elements of an offense, because the jury is still required to consider and return a verdict on *all* of the elements of the offense. *Id.* at 681.

Lastly, with respect to this claim, petitioner alleges that his attorney failed to consult him before entering into the stipulations. Assuming that this is true, Sellman has failed to demonstrate that such conduct amounts to deficient performance under *Strickland.* In fact, this court has held that the decision to enter into stipulations is a matter of trial tactics, *United States v. Green,* 21 F.Supp.2d 521, 523 (D.Md.1998), and an attorney's tactical decisions are entitled to a presumption of correctness. *See Evans v. Thompson,* 881 F.2d 117 (4th Cir.1989). Sellman utterly fails to overcome this presumption for, as stated above, he does not even allege prejudice stemming from his attorney's decision, nor does he demonstrate how the outcome of the trial would have differed in the absence of any stipulations. Given this background, petitioner's claim must fail.

■ Next, Sellman argues that counsel was ineffective during sentencing. First, he maintains that counsel was deficient for failing to challenge the legality of his prior conviction for distribution of heroin. However, this claim fails for the reasons addressed in Part I above. As the Supreme Court unequivocally stated, "that § 924(e) does not permit [a defendant] to use the federal sentencing forum to gain review of his state convictions." *Custis,* 511 U.S. at 497, 114 S.Ct. 1732.

■ Secondly, he argues that counsel should have requested a departure pursuant to United States Sentencing Guidelines (herein USSG) § 4A1.3 for over-representation of criminal history. This claim is frivolous, for at the time of sentencing Sellman's criminal history spanned close to twenty years and included twelve prior offenses, two of which were violent felonies. This is hardly the type of situation the authors of the Guidelines envisioned

when drafting § 4A1.3. In fact, the guideline manual reads:

> An example [of overstated criminal history] might include the case of a defendant with two misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.

USSG § 4A1.3. Sellman's criminal history does not closely resemble this scenario; therefore, his claim is denied.

■ Additionally, petitioner contends that counsel erred in failing to request an adjustment for acceptance of responsibility pursuant to USSG § 3E1.1. He alleges that he would have accepted responsibility for his conduct, when interviewed by the probation officer for the presentence investigation report, had his attorney been present at the interview, or properly advised him prior to the interview. Further, he argues that he accepted responsibility at sentencing, and the fact that he went to trial should not preclude him from receiving the benefit of the adjustment.

Petitioner is correct in noting that the guidelines do not preclude an adjustment for acceptance of responsibility simply because a defendant proceeds to trial. However, a § 3E1.1 guideline adjustment is reserved for individuals who "clearly demonstrate[ ] acceptance of responsibility" for their conduct, and is not appropriate when the defendant "puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG § 3E1.1 n. 2. Given his background, Sellman, who clearly contested several essential elements of the charged offenses, is not entitled to a § 3E1.1 adjustment. Furthermore, even if this court were to find that his attorney was deficient for failing to advise him about this adjustment during or prior to the probation interview, Sellman still would not be able to prove prejudice, because acceptance of responsibility at that

interview would not have warranted any such adjustment.

■ Sellman's final claim of ineffective assistance involves the two level upward adjustment for possession of a stolen firearm pursuant to USSG § 2K2.1(b)(4). Assuming, without deciding, that the enhancement for possessing a stolen firearm was inappropriate, the petitioner's claim still fails, for he was in no way prejudiced by this adjustment. Sellman was sentenced as an armed career criminal; therefore, his offense level, pursuant to USSG § 4B1.1(b)(3), was automatically set at 34—well above his initial offense level calculation, with or without the stolen firearm adjustment. Sellman's failure to demonstrate prejudice is fatal to his claim.

III. *Authority to Depart*

Next, Sellman alleges that the sentencing court, this court, did not realize that it had such authority to affect a downward departure for overstatement of criminal history pursuant to § 4A1.3. Further, he argues that if the court had realized its authority, he would have received a downward departure. This issue is easily resolved, for the present court is the very court which sentenced the petitioner. In that connection, this court well understood that it possessed the authority to grant a departure for over-representation of criminal history; however, a departure was not granted, because, as discussed above, petitioner's criminal history was in no wise "over-represented."

IV. *Double Jeopardy Claims*

Next, Sellman contends that certain of his convictions violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. His argument is oblique at best; however, it appears that he is making the following claims: 1) that he was twice convicted of the same crime in Counts I and IV; 2) that he was twice convicted of the same crime in Counts II and V; and 3) that the dismissal of Count VI compels the dismissal of Count III.

Sellman was charged in a six count indictment. Count I charged him with unlawfully possessing a firearm, a .32 caliber Smith and Wesson which was found in his car, in violation of 18 U.S.C. § 922(g). Count IV also charged unlawful possession of firearms in violation of § 922(g), with the firearms charged in that count located in Sellman's house and consisting of a .22 caliber, a .45 caliber, a .38 special, and two .25 caliber guns. Counts II and V charged possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841, with Count II consisting of drugs recovered from his car, and Count V with the drugs recovered from his home. Finally, Counts III and VI charged the use of a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c). Count III related to the gun found in Sellman's car, while Count VI related to the guns found in the home. After conviction, but prior to sentencing, Count VI was dismissed in light of *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

■ Sellman first claims that he was twice convicted of the same crime in violation of the Constitutional prohibition against double jeopardy. He alleges that Counts I and IV constituted one continuing offense; therefore, conviction under both Counts is a violation of double jeopardy. However, the Fourth Circuit has repeatedly held that multiple § 922(g) offenses are committed when firearms are either separately obtained or separately stored. *See, e.g. United States v. Dunford,* 148 F.3d 385 (4th Cir.1998); *United States v. Mullins,* 698 F.2d 686 (4th Cir.1983); and *United States v. Oliver,* No. 99–4231, 2000 WL 263954 (4th Cir. Mar.9, 2000). Considering that Sellman stored one firearm in his vehicle and the remaining five in his home, two separate firearm charges were permissible, and conviction on each count did not violate the Double Jeopardy Clause.

Sellman also contends that he was twice convicted of the same offense in Counts II

and V. Essentially, he argues that the indictment was multiplicitous with respect to Counts II and V, in that the two counts constituted one continuing offense. His claim has no merit.

 The Double Jeopardy Clause of the Fifth Amendment provides essentially two types of protections, one is a protection against successive prosecutions for the same offense, and the other is a protection against multiple punishments for the same offense. *See United States v. Luskin*, 926 F.2d 372, 377 (4th Cir.1991). Indictments which charge a single offense in multiple counts are multiplicitous and create a risk of multiple punishments for the a single offense in violation of double jeopardy. *See Id.* However, counts are not considered multiplicitous if each "requires proof of an additional fact that the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In the present case, Sellman was charged with two counts of possession with intent to distribute; the first count required proof of a quantity of drugs stored in his home, while the second required proof of a quantity of drugs located in his car. Further, Sellman did not receive multiple punishments for these offenses. His sentence was calculated based on the total amount of drugs recovered[4] resulting in a 262 month sentence for Count V which was to run concurrent to his 262 month sentence for Count II. In short, Sellman did not receive multiple sentences for the same offense; thus, double jeopardy was not violated.

 Finally, Petitioner maintains that the dismissal of Count VI warrants the dismissal of Count III. Both Counts VI and III charged Sellman with the use of a firearm in the commission of a drug offense. Count III referred to the gun found in Sellman's car, and Count VI re-

ferred to the firearms located in his home. After the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), this court dismissed Count VI, finding that petitioner had not "used or carried" the firearms in question. At the same time, petitioner's counsel requested that Count III also be dismissed under the same rationale; however, this court denied that request. The facts of the case have not changed, Sellman was arrested carrying a bag containing both drugs and a firearm. Against this background, this case falls squarely within the purview of 18 U.S.C. § 924(c)(1) as interpreted by the Supreme Court in *Bailey*. In short, the firearms were "carried" within the meaning of the statute.

Sellman also argues that because the drug possession counts (II and V) should have merged, the § 924 counts (III and VI) should have been merged as well; thus, the dismissal of one should have resulted in the dismissal of both. However, as discussed previously, Counts II and V were properly charged; and therefore, Sellman's argument completely lacks merit.

## V. *Firearm Convictions*

Petitioner's final claim is that his § 924 conviction for use of a firearm during and in relation to a drug trafficking crime should be set aside in light of the Supreme Court's decision in *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). Sellman argues that he was not using or carrying the firearm in question "during and in relation" to a drug trafficking crime and that therefore there was no connection between the firearm and the drug trafficking offense. Ironically, the very case that Sellman cites in

---

**4.** The sentence in the instant case would not have been any different if Sellman had been charged in one count instead of two, because his sentence was based on the total quantity of drugs in his possession. The government, in charging Sellman, simply divided the total quantity of drugs into two separate counts

depending on where the drugs were located (ie. in the house and car). Such "carving up" of indictments is permissible, where, as here, a defendant does not receive multiple punishments for the same conduct. *Luskin*, 926 F.2d at 378.

support of his argument is in direct opposition to his claim. In *Muscarello*, the defendant sold marijuana which he carried in his truck to the site of the sale. *See Id.* Locked in the glove compartment of his truck was a handgun. *See Id.* Muscarello argued that the handgun, locked in the glove compartment as it was, did not fall within the meaning of the term "carry." *See Id.* However, the Supreme Court discussed the words "during" and "in relation to" in examining the statute and Congress' intent, and ultimately held that a gun carried in a car during a drug sale, whether locked in a glove compartment or a trunk, is still within the purview of § 924. *See Id.* In the present case the facts are even clearer, because the gun was immediately accessible—located in the same bag as the drugs. Given this circumstance, Petitioner's claim is again without merit.

For all of the foregoing reasons, the motion to vacate is denied.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ordered this 20th day of April, 2000:

1) that the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 be denied;

2) that a copy of this memorandum and order be sent to the parties; and

3) that the Clerk of Court close this case.